Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL V

| SUCN. JOSÉ SANTIAGO ÁLVAREZ **Apelante** V. JOSÉ LUIS ARROYO MEDINA **Apelado** | KLAN202300907 | *APELACIÓN* procedente del Tribunal de Primera Instancia, Sala Superior de Humacao Civil. Núm. HU2022CV00106 Sobre: SENTENCIA DECLARATORIA |
|---|---|---|

Panel integrado por su presidente, el Juez Hernández Sánchez, la Jueza Romero García y la Jueza Martínez Cordero.

Hernández Sánchez, Juez Ponente

**RESOLUCIÓN**

En San Juan, Puerto Rico, a 7 de diciembre de 2023.

El 12 de octubre de 2023, la sucesión del Sr. José Santiago Álvarez t/c/p José Santiago Del Valle compuesta por la Sra. Flor Santiago Molina, el Sr. José Luis Santiago Molina, la Sra. Carmen Lydia Santiago Molina, el Sr. Andrés Santiago Molina, el Sr. Cristóbal Santiago Molina y la Sra. Nilda Santiago Molina (sucesión Santiago Molina o parte peticionaria) comparecieron ante nos mediante un recurso de *Apelación*[1] y solicitaron la revisión de una *Sentencia* que se emitió el 12 de septiembre de 2023 y se notificó el 14 de septiembre de 2023, por el Tribunal de Primera Instancia, Sala Superior de Humacao (TPI). Mediante el referido dictamen, el TPI declaró Ha Lugar la *Moción de Sentencia Sumaria* que presentó el Sr. José Luis Arroyo Medina (señor Arroyo Medina), su esposa, la Sra. Brenda Sánchez Velázquez (señora Sánchez Velázquez) y la Sociedad Legal de Gananciales compuesta por ambos (parte

---

[1] Examinado el expediente del recurso y la sentencia apelada, advertimos que el dictamen recurrido no es final, por lo que acogemos la *Apelación* como un recurso de *Certiorari* por ser el recurso adecuado para la revisión de la determinación recurrida. Sin embargo, para fines administrativos, mantenemos la codificación alfanumérica que la Secretaría de este foro le asignó al caso.

recurrida). En consecuencia, determinó que existía un contrato de compraventa válido entre las partes y ordenó a la parte peticionaria a otorgar una escritura de ratificación de compraventa.

Por los fundamentos que expondremos a continuación, ***denegamos*** el recurso de epígrafe.

I.

El 1 de febrero de 2022, la sucesión Santiago Molina presentó una *Demanda* sobre sentencia declaratoria en contra de la parte recurrida; la sucesión del Sr. Mariano Santiago Del Valle compuesta por la Sra. Marilyn Santiago Vega y la sucesión de la Sra. Flora Santiago Álvarez compuesta por la Sra. Carmen Vega Santiago, el Sr. Juan A. Vega Santiago, la Sra. María M. Vega Santiago, la Sra. Wilma S. Vega Santiago y la Sra. Luz M. Vega Santiago. [2]

En síntesis, alegaron que eran dueños en pleno dominio de un predio de terreno ubicado en el municipio de Yabucoa, en conjunto con la sucesión del Sr. Mariano Santiago Del Valle y la sucesión de la Sra. Flora Santiago Álvarez. A su vez, argumentaron que la Escritura Núm. 5 sobre *Segregación, Adjudicación y Compraventa de Bienes Hereditarios*[3] que suscribió el Sr. José Santiago Álvarez, la Sra. Flora Santiago Álvarez y la Sra. Marilyn Santiago Vega, quien compareció en representación de su padre, el Sr. Mariano Santiago Del Valle, con la parte recurrida era nula.

De igual forma, indicaron que la Escritura Núm. 28 sobre *Segregación, Adjudicación y Donación*[4] que suscribieron las mismas partes antes mencionadas era nula, debido a que adolecía de los mismos defectos que la Escritura Núm. 5. Por último, enfatizaron que, mediante dicha escritura, se le adjudicó el lote Núm. 5 a la parte recurrida, como una donación luego de que se efectuara la

---

[2] Íd., págs. 34-36.
[3] Íd., págs. 12-19.
[4] Íd., págs. 20-28.

compraventa de dicho lote en la Escritura Núm.5. Por todo lo anterior, sostuvieron que procedía que el TPI dictase sentencia declaratoria y declarase nulas ambas escrituras.

Por su parte, el 15 de junio de 2022, la parte recurrida presentó una *Moción en Solicitud de Desestimación de la Demanda*.[5] En esencia, alegó que, la demanda no aducía hechos suficientes que constituyeran una reclamación válida. Adujo, además, que dictar sentencia declaratoria afectaría los derechos de las partes ya que se vería afectado la titularidad del predio de terrero al declarar nulas las Escrituras Núm. 5 y Núm. 28. En desacuerdo, el 21 de julio de 2022, la parte peticionaria presentó su *Oposición a Desestimación* en la cual reiteró los planteamientos de la *Demanda*.[6] Asimismo, señaló que el propósito del recurso era poner fin a la incertidumbre que originó el otorgamiento de ambas escrituras públicas.

Luego de examinar los argumentos presentados por las partes, el 27 de julio de 2022, el TPI emitió una *Orden*[7] que se notificó al día siguiente, en la cual declaró No Ha Lugar la *Moción de Desestimación* que presentó la parte recurrida. [8]

Así las cosas, el 4 de agosto de 2022, la parte recurrida presentó su *Contestación a Demanda* en la cual negó la mayoría de las alegaciones.[9] A su vez, la parte recurrida presentó su *Reconvención* en la cual alegó que acordó la compraventa del lote Núm. 5 con la parte peticionaria por el precio de diez mil dólares (10,000.00). [10] Razonó, que la parte peticionaria estaba obligada a entregar el predio de terreno y a transferir el dominio según las

---

[5] Véase, págs. 37-43 del apéndice del recurso.

[6] Íd., págs.44-46.

[7] Véase, entrada Núm. 40 del Sistema Unificado de Manejo y Administración de Casos (SUMAC).

[8] El 27 de julio de 2022, el TPI emitió una *Orden* que se notificó al día siguiente, en la cual anotó la rebeldía de Juan A. Vega Santiago, María Vega Santiago, Luz M. Vega Santiago y Marilyn Santiago Vega según se solicitó en la *Moción Solicitando Anotación de Rebeldía* del 21 de julio de 2022 que presentó la parte peticionaria.

[9] Véase, págs. 47-51 del apéndice del recurso.

[10] Íd., págs. 49-51.

escrituras públicas que otorgaron. En virtud de lo anterior, solicitó daños a la parte peticionaria.

Luego de examinar los argumentos presentados por las partes, el 7 de abril de 2023, el TPI emitió una *Sentencia Parcial*[11], que se notificó el 10 de abril de 2023, en la cual declaró nula la Escritura Núm. 5 y la Escritura Núm. 28 por incumplir con el Art. 21, 4 LPRA sec. 2039, el Art. 23, 4 LPRA sec. 2052, y el Art. 24, , 4 LPRA sec. 2042, de la Ley Notarial y la Regla 32, 4 LPRA Ap. XXIV, la Regla 33, 4 LPRA Ap. XXIV, y la Regla 35, 4 LPRA Ap. XXIV del Reglamento Notarial.[12] Asimismo, ordenó el archivo y notificación de la *Sentencia Parcial* conforme a la Regla 42.3 de Procedimiento Civil, 32 LPRA Ap., R. 42.3.

Posteriormente, el 22 de junio de 2023, la parte recurrida presentó una *Moción en Solicitud de Sentencia Sumaria*.[13] En síntesis, alegó que aun cuando se decretó la nulidad de ambas escrituras, subsistía el contrato de compraventa en concepto de documento privado. Por tanto, señaló que el contrato que suscribieron era válido. En virtud de lo anterior, solicitó se declarase válido el contrato de compraventa y, se ordenase a la parte peticionaria a traspasar formalmente la finca.

Por su parte, el 19 de julio de 2023, la parte peticionaria presentó su *Oposición a Moción en Solicitud de Sentencia Sumaria*.[14] Arguyó que, se realizó un solo cheque por la suma de cinco mil dólares ($5,000.00) a nombre del notario Natividad Márquez Pérez y la Sra. Marilyn Santiago Vega, por lo que no se llevó a cabo el contrato de opción de compra. Asimismo, enfatizó que las escrituras

---

[11] Íd., págs. 74-79.
[12] Íd., págs. 74-79.
[13] Íd., págs. 80-91.
[14] Íd., págs. 105-108.

eran un negocio simulado. Así pues, reiteró que al ser nulas la escrituras, era nulo el acto jurídico.[15]

Luego de examinar los argumentos esgrimidos por las partes, el 12 de septiembre de 2023, el TPI emitió una *Sentencia* que se notificó el 14 de septiembre de 2023. En primer lugar, realizó las siguientes determinaciones de hechos:

1. Don José Santiago del Valle, también conocido como José Santiago Álvarez, su hermana Flora Santiago Álvarez y su sobrina Marilyn Santiago Vega eran dueños en común proindiviso de la siguiente propiedad:

   "RÚSTICA: Predio de terreno ubicado en el Barrio Playa Guayanés, Sector Calambreñas del término municipal de Yabucoa, Puerto Rico, con una cabida aproximada de cuatro a cuatro y media cuerdas (4 a 4 ½ cdas.), equivalentes a quince mil setecientos veintiún metros con sesenta centésimas de otro a diecisiete mil setecientos ochenta y seis con ocho décimas de otro (15,721.60 a 17,686.8), en lindes por el Norte, con Tomás Martínez; por el Sur, con la sucesión de Ernesto Carrasquillo; por el Este, con Antonio Roig y sucesores; por el Oeste, con Enrique Pérez. Transcurre por el mismo camino municipal que grava la propiedad".

2. El 16 de agosto de 2023, don José Santiago del Valle t/c/p José Santiago Álvarez y su sobrina Marilyn Santiago Vega otorgaron un Contrato de Opción a Compra de un solar de 1.4833 cuerdas, equivalentes a 5,830.243 m2 a segregarse de la finca descrita con anterioridad a favor del demandado José Luis Arroyo Medina por la suma de diez mil dólares ($10,000.00). Según pactado, el señor Arroyo Medina pagaría la suma cinco mil dólares ($5,000.00) al momento de la firma de la opción y los restantes cinco mil dólares ($5,000.00) al momento del otorgamiento de las correspondientes escrituras. Dicho primer pago fue realizado el mismo día (6 de agosto de 2003) y evidenciado mediante cheque de gerente número 027952 de la Cooperativa de Ahorro y Crédito de Humacao.

3. Completados los trámites de agrimensura y segregación, comparecieron José Santiago del Valle, Flora Santiago Álvarez y Marilyn Santiago Vega ante el Notario Natividad Márquez Pérez y mediante la escritura número cinco (5) de 25 de enero de 2005, venden al Sr. José Luis Arroyo y su esposa Brenda Sánchez el solar de 5,490.0228 m2 por la suma pactada de diez mil

---

[15] Íd., págs. 109-118: El 7 de agosto de 2023, la parte recurrida presentó su *Réplica a "Oposición a Moción en Solicitud de Sentencia Sumaria"*. En respuesta, el 14 de agosto de 2023, la parte peticionaria presentó su *Dúplica a Réplica a Oposición a Moción en Solicitud de Sentencia Sumaria*.

dólares ($10,000.00) de los cuales ya se había pagado la mitad. En la misma escritura se segregaron cinco (5) solares y se adjudicaron las participaciones correspondientes a los vendedores.

4. El señor Arroyo pagó los cinco mil dólares (5,000.00) restantes mediante cheque de gerente número 003062 de la Cooperativa de Ahorro y Crédito de Las Piedras.

5. A pesar de haberse otorgado la Escritura Número Cinco (5) sobre compraventa a favor de la parte demandada José Luis Arroyo Medina y su esposa, el 25 de abril de 2005, las mismas partes comparecieron ante el mismo Notario Público y otorgaron la escritura de donación número 28 en la cual "donan" la misma finca que había sido vendida a los demandados. Nada dice esta escritura sobre dejar sin efecto la compraventa anterior.

6. Tanto en la escritura número cinco (5) como en la escritura número veintiocho (28) comparecieron como testigos de firma y lectura por el compareciente de la Primera Parte, José Santiago del Valle, también conocido como José Santiago Álvarez al no saber éste leer ni escribir, sus hijas Nilda Santiago Molina y Flor María Santiago, respectivamente.

7. Las escrituras número cinco (5) y número veintiocho (28) fueron declaradas nulas por el Tribunal mediante Sentencia Parcial final y firme.

8. El negocio de compraventa realizado entre las partes cumple con los requisitos de consentimiento, objeto y causa y está recogido en un contrato privado de compraventa que subsiste al anularse el instrumento público.

En vista de las determinaciones de hechos realizadas y conforme al derecho aplicable, el TPI determinó que subsistía y era válido el contrato de compraventa que se otorgó entre las partes y, que dicho contrato tenía concepto de documento privado. Respecto a la Escritura Núm. 28 sobre donación, concluyó que era un negocio simulado para intentar sustraer frente a terceros el negocio de la compraventa. Así pues, resolvió que la escritura de donación era inexistente. A su vez, reiteró que el término para solicitar la nulidad de la escritura de compraventa era de cuatro (4) años, contados a

partir de la firma de la escritura, por lo que la causa de acción estaba prescrita.

Consecuentemente, declaró Ha Lugar la *Moción en Solicitud de Sentencia Sumaria* y declaró válido el contrato de compraventa a favor de la parte recurrida. [16] Además, le ordenó a la sucesión del Sr. José Santiago Del Valle, a la sucesión de la Sra. Flora Santiago Álvarez y a la Sra. Marilyn Santiago Vega a que otorgaran una escritura de ratificación de compraventa a favor de la parte recurrida. A su vez, ordenó que dicha escritura tenía que estar acompañada de los permisos de segregación y planos para poder inscribirse en el Registro de la Propiedad.

Aún inconforme, el 12 de octubre de 2023, la sucesión Santiago Molina presentó el recurso de epígrafe y formuló los siguientes señalamientos de error:

> **Erró el TPI al dictar sentencia sumaria a favor de la parte demandada cuando ya había declarado nulas las escrituras número 5 del 25 de enero de 2005 y la escritura 28 del 25 de abril de 2005 de compraventa entre las partes ignorando que dicho negocio fue dejado sin efecto al haberse otorgado una escritura de donación posterior al contrato de compraventa.**

> **En la alternativa erró el honorable tribunal al dictar sentencia sumaria existiendo controversias sustanciales de hechos por documentos y por declaraciones juradas contradictorias que debían ser adjudicadas en un juicio plenario y no sumariamente.**

Atendido el recurso, el 16 de octubre de 2023, emitimos una *Resolución* concediéndole a la parte recurrida hasta el 13 de noviembre de 2023 para que presentara su postura. Oportunamente, la parte recurrida presentó *Alegato en Oposición a Escrito de Apelación* en la cual negó que el TPI cometiera los errores que la parte peticionaria imputó.

Con el beneficio de la comparecencia de ambas partes, procedemos a resolver. *Veamos.*

---

[16] Íd., págs. 119-138.

## II.

### -A-

El *certiorari* es el vehículo procesal extraordinario utilizado para que un tribunal de mayor jerarquía pueda corregir un error de derecho cometido por un tribunal inferior. *Torres González v. Zaragoza Meléndez*, 2023 TSPR 46, 211 DPR__ (2023). Los tribunales apelativos tenemos la facultad para expedir un *certiorari* de manera discrecional. Íd. Esta discreción se define como "el poder para decidir en una u otra forma, esto es, para escoger entre uno o varios cursos de acción". *García v. Padró*, 165 DPR 324, 334 (2005). Asimismo, discreción es una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justa. Íd., pág. 335. Ahora bien, la aludida discreción que tiene este foro apelativo para atender un *certiorari* no es absoluta. Íd. Esto ya que no tenemos autoridad para actuar de una forma u otra, con abstracción total al resto del derecho, pues ello constituiría abuso de discreción. Íd. Así, "el adecuado ejercicio de la discreción judicial esta inexorable e indefectiblemente atado al concepto de la razonabilidad". Íd.

La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, establece que el recurso de *certiorari* para resolver resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, será expedido por el Tribunal de Apelaciones cuando se recurre de: (1) una resolución u orden bajo la Regla 56 (Remedios Provisionales) y la Regla 57 (*Injunction*) de las Reglas de Procedimiento Civil; (2) la denegatoria de una moción de carácter dispositivo y; (3) por excepción de: (a) decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales; (b) asuntos relativos a privilegios probatorios; (c) anotaciones de rebeldía; (d) casos de relaciones de familia; (e) casos que revistan interés público; y (f) cualquier otra situación en la que esperar a la apelación constituiría un fracaso irremediable de la justicia.

Por su parte, la Regla 40 del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B enmarca los criterios que debe evaluar este tribunal al expedir un auto de *certiorari.* La aludida regla establece lo siguiente:

El tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de certiorari o de una orden de mostrar causa:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. 4 LPRA Ap. XXII-B, R. 40.

Ninguno de estos criterios es determinante por sí solo para el ejercicio de jurisdicción y tampoco constituyen una lista exhaustiva. *García v. Padró,* supra, pág. 335. La norma vigente es que los tribunales apelativos podremos intervenir con las determinaciones discrecionales del Tribunal de Primera Instancia cuando este haya incurrido en arbitrariedad, craso abuso de discreción o en un error en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo. *Pueblo v. Rivera Santiago*, 176 DPR 559, 581 (2009).

**-B-**

La Regla 42.1 de las Reglas de Procedimiento Civil, 32 LPRA, Ap. V, R. 42.1, define la sentencia como cualquier determinación del

TPI que resuelva finalmente la cuestión litigiosa y de la cual pueda apelarse. Particularmente, una sentencia final, es aquella que resuelve todas las controversias entre todas las partes de forma tal que no quede pendiente nada más que la ejecución de ésta. *Cruz Roche v. Colon y Otros,* 182 DPR 313, 323 (2011). Es sentencia firme, por el contrario, aquella contra la que no cabe un recurso de apelación. *Suarez v. E.L.A.,* 162 DPR 43, 62, (2004).

De otra parte, según la Regla 43.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 42.3, una sentencia parcial es la determinación que hace el TPI cuando está ante un pleito que envuelve controversias o partes múltiples, resolviendo finalmente alguna de las reclamaciones, o todas en cuanto a una parte. **De igual forma, la referida regla explica que será una sentencia parcial final aquella que al resolverse el juzgador le adscribe carácter de finalidad. Es decir, que cumple con dos requisitos, a saber: (1) que el juzgador exprese clara e inequívocamente que no existe razón para posponer la resolución de esta reclamación hasta la adjudicación total del pleito, y (2) que ordene expresamente que se registre y se notifique esa sentencia.** *Rosario y otros v. Hospital Gen. Menonita, Inc.,* 155 DPR 49, 57 (2001). (Énfasis nuestro).

En específico, la Regla 42.3, *supra*, dispone que,

Cuando un pleito comprenda más de una reclamación, ya sea mediante demanda, reconvención, demanda contra coparte o demanda contra tercero o figuren en él partes múltiples, el tribunal podrá dictar sentencia final en cuanto a una o más de las reclamaciones o partes sin disponer de la totalidad del pleito, siempre que concluya expresamente que no existe razón para posponer que se dicte sentencia sobre tales reclamaciones hasta la resolución total del pleito, y siempre que ordene expresamente que se registre la sentencia. Cuando se haga la referida conclusión y orden expresa, la sentencia parcial dictada será final para todos los fines en cuanto a las reclamaciones o los derechos y las obligaciones en ella adjudicada, y una vez sea registrada y se archive en autos copia de su notificación, comenzarán a transcurrir en lo que a ella respecta los términos dispuestos en las Reglas 43.1, 47, 48 y 52.2 de este apéndice. 32 LPRA Ap.V. R. 42.3

El propósito de cumplir con los requisitos de la Regla 42.3 de Procedimiento Civil, *supra*, al disponer de una reclamación parcialmente, es que la parte perdidosa quede debidamente advertida de su derecho de apelar ante un foro de mayor jerarquía. *Figueroa v. Del Rosario*, 147 DPR 121, 127 (1998). Así también, como mencionamos anteriormente, al otorgar esta finalidad y una vez quede correctamente notificada y archivada, los términos para solicitar remedios post sentencia comenzarán a transcurrir. *Rosario y otros v. Hospital Gen. Menonita, Inc.,* supra, pág. 57.

Asimismo, es importante recordar que esta sentencia parcial, por tener finalidad, es una determinación susceptible de apelación. Entonces, las partes tienen derecho a la revisión de ese dictamen en este Tribunal de Apelaciones, mediante el vehículo de la apelación. 32 LPRA Ap. V, R. 52. Así lo establece el Art. 4.006(a) de la Ley de la Judicatura, *supra*, en el cual faculta al Tribunal de Apelaciones a conocer mediante apelación, "toda sentencia final dictada por el Tribunal de Primera Instancia". 4 LPRA sec. 24 (x)(a).

Dicho lo anterior, si una sentencia parcial adolece de la referida determinación de finalidad que requiere la Regla 42.3 de Procedimiento Civil, *supra*, no advendrá final y la misma no constituirá más que una resolución interlocutoria, que podrá revisarse sólo mediante recurso de *certiorari,* si así lo permite la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, o mediante recurso de apelación cuando recaiga sentencia final en el caso sobre el resto de las reclamaciones. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 95 (2008).

Por tanto, si la intención del TPI es disponer de la totalidad de las reclamaciones ante su consideración, así debe consignarlo expresamente en la parte dispositiva de su sentencia. Consecuentemente, el omitir la adjudicación de una reclamación en

la parte dispositiva de una sentencia tiene el efecto de mantener tal reclamación "viva y pendiente de adjudicación". *Cárdenas Maxán v. Rodríguez,* 119 DPR 642, 658 (1987).

En modo de resumen, a la hora de determinar si estamos ante una sentencia revisable por medio de un recurso de apelación, o ante un dictamen interlocutorio revisable mediante el auto discrecional de *certiorari*, es crucial auscultar si la determinación a revisarse adjudica de forma *final* el asunto litigioso ante el foro de instancia en cuanto a una o más partes, o una o más causas de acción, o si sólo resuelve algún asunto interlocutorio sin disponer de la totalidad del caso. Como mencionamos, de tratarse de una resolución u orden interlocutoria emitida por el Tribunal de Primera Instancia, una parte interesada en solicitar revisión puede hacerlo mediante el auto discrecional del *certiorari*, sujeto a las disposiciones de la Regla 52.1 de Procedimiento Civil, *supra.*

III.

Al examinar el expediente ante nuestra consideración, notamos que la llamada apelación impugna un dictamen que no resolvió todos los asuntos que le fueron planteados. Según mencionamos, el omitir una reclamación en la parte dispositiva de una sentencia tiene el efecto de mantener tal reclamación viva y pendiente de adjudicación. Por lo tanto, ante la ausencia de una manifestación en la parte dispositiva sobre la *Reconvención*[17] presentada por la parte recurrida, nos es forzoso concluir que el TPI dejó viva y pendiente de adjudicación dicha reclamación. Al así proceder, el dictamen del TPI no constituye una sentencia de la cual pueda presentarse un recurso de apelación.

De igual forma, debemos aclarar que el dictamen no es una sentencia parcial, por no cumplir con los requisitos de la Regla 42.3

---

[17] Un panel hermano, mediante el alfanumérico KLAN201901170, tuvo ante sí una controversia similar.

de las de Procedimiento Civil, *supra*. Por lo cual, no surge de su dictamen que el TPI tuviera la intención de resolver finalmente una reclamación y continuar con las reclamaciones restantes. Por lo anterior, debemos concluir que el dictamen impugnado es una resolución interlocutoria que no culmina el pleito en su totalidad, por lo cual acogemos el presente como un recurso discrecional de *certiorari*. Con ello en mente y dada la naturaleza de la actuación del TPI, resolvemos que, en este caso, no están presentes ninguno de los criterios de la Regla 52.1 de Procedimiento Civil, *supra*, y la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*, para atender el recurso.

Por el contrario, lo más adecuado es que el TPI disponga de la totalidad de las reclamaciones de las partes de epígrafe, pues lo contrario constituiría un fraccionamiento indebido del caso.

IV.

Por los fundamentos antes expuestos, ***denegamos*** el recurso de *certiorari*.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones